Singh v. Bondi
BIA
Thompson, IJ
A202 068 904

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of June, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> > *Circuit Judges.*

_____

SARBJIT SINGH,
> *Petitioner,*

v.                                                              **23-6074**
                                                                 **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:**             Godfrey Y. Muwonge, Law Office of Godfrey Y. Muwonge, LLC, Wauwatosa, WI.

**FOR RESPONDENT:**             Brian M. Boynton, Principal Deputy Assistant Attorney General; Erica B. Miles, Assistant Director; A. Ashley Arthur, Trial Attorney; Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Sarbjit Singh, a native and citizen of India, seeks review of a December 19, 2022 decision of the BIA, affirming a June 24, 2019 decision of an Immigration Judge ("IJ"), which denied his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Sarbjit Singh,* No. A 202 068 904 (B.I.A. Dec. 19, 2022), *aff'g* No. A 202 068 904 (Immig. Ct. N.Y. City June 24, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances, we have reviewed the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review fact-finding "under the substantial evidence standard," and we review questions of law and the application of law to fact de novo. *Hong Fei Gao v.*

2

*Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The agency reasonably concluded that Singh did not establish that the Indian government would be unable or unwilling to protect him from members of the Badal Party. An asylum applicant has the burden to show past persecution or a well-founded fear of future persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1158(b)(1)(B)(i); *see* 8 C.F.R. § 1208.13(b). "To qualify as 'persecution' the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private persons whom the government is 'unable or unwilling to control.'" *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (quoting *Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015)); *see also Singh v. Garland*, 11 F.4th 106, 115 (2d Cir. 2021) ("Members of a political party are not the government; for mistreatment inflicted by party members to amount to persecution, an applicant must show that the government was unwilling or unable to control the attackers."). To show "persecution based on private party violence, an [applicant] must show either that the government

3

condoned the action or, even if it did not, that it was completely helpless to protect the victims." *Scarlett*, 957 F.3d at 332; *see also Singh*, 11 F.4th at 114–15.

The agency did not err in concluding that the local police's inadequate response did not alone establish that the government would be unable or unwilling to protect Singh. The political party in power nationally was the Bharatiya Janata Party ("BJP"), Singh's attackers were supporters of the Badal Party, and Badal Party members are not the government, nor would they have been even if they were BJP members. *See Singh*, 11 F.4th at 115 ("An applicant's allegation that he was persecuted by members of a political party—even one that is in power nationally or, as [petitioner] alleges of the Akali Dal Badal, is aligned with a party in power nationally—does not establish that the applicant was persecuted by the government."). That Singh's mother went to the police twice and that police refused to help is relevant, but not dispositive, and was countered by evidence of the country conditions. The evidence described general corruption in India, but also attempts by the BJP-controlled Indian government to investigate and curtail official or police corruption and to offer redress to its victims. It also indicated, contrary to Singh's contentions on appeal, that Indian police are under state, rather than national or centralized, control. Combined with Singh's

4

testimony that the Congress Party governs his home state, the evidence related to the country conditions does not show a BJP-Indian government that "condone[s]" private persecutors or is "helpless" to protect victims. *Cf. Scarlett*, 957 F.3d at 332.

Singh argued before the agency, as he does here, that he showed an alliance between the Badal Party members who beat him and the BJP. But his evidence showed no such alliance—in fact, it did not mention the Badal Party, nor did it mention the Mann Party, with which Singh was affiliated. Moreover, Singh's counsel could not point to such evidence at the hearing, and Singh had the burden of proof. *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 157–58 (2d Cir. 2008) ("[W]hen a petitioner bears the burden of proof, his failure to adduce evidence can itself constitute the substantial evidence necessary to support the agency's challenged decision." (quotation marks and citation omitted)). Even assuming *arguendo* that there was an alliance between the BJP and the Badal Party and that the agency should have taken administrative notice of that fact, "[m]embers of a political party are not the government" and an applicant still has the burden to "show that the government was unwilling or unable to control the attackers." *Singh*, 11 F.4th at 115 & n.3 (upholding agency's conclusion that an applicant had not established government persecution where he was beaten by Badal Party members who were

5

"aligned with" the BJP, and noting that shifting alliances would not change that conclusion).

In sum, the record supports the agency's denial of asylum and withholding of removal based on Singh's failure to show that the government was unable or unwilling to control his attackers. *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 583 (2d Cir. 2021) ("Under [the substantial evidence] standard, we must uphold agency factfinding 'unless any reasonable adjudicator would be *compelled* to conclude to the contrary.'" (quoting 8 U.S.C. § 1252(b)(4)(B)) (emphasis in original)).

Substantial evidence also supports the agency's denial of CAT relief. An applicant for CAT relief bears the burden to establish that he would "more likely than not" be tortured by or with the acquiescence of a government official. 8 C.F.R. § 1208.16(c)(2); *see also id.* § 1208.18(a)(1) (defining "torture"). To establish acquiescence to torture, the applicant must show that "the public official, prior to the activity constituting torture, [will] have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7); *see Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) ("[T]orture requires only that government officials know of or remain

6

willfully blind to an act and thereafter breach their legal responsibility to prevent it."); *Pierre v. Gonzales*, 502 F.3d 109, 118 (2d Cir. 2007) ("A *private* actor's behavior can constitute torture under the CAT without a government's specific intent to inflict it if a government official is aware of the persecutor's conduct and intent and acquiesces in violation of the official's duty to intervene." (emphasis in original)). In evaluating a CAT claim, the agency considers "all evidence relevant to the possibility of future torture," including "[e]vidence of past torture," the applicant's ability to "relocate to a part of the country of removal where he or she is not likely to be tortured," "gross, flagrant or mass violations of human rights within the country of removal," and "[o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3).

Singh argues that his two beatings by Badal Party members constituted past torture because the intentional infliction of pain as punishment is torture under the definition in 8 C.F.R. § 1208.18(a)(1). Evidence of past torture is relevant in a determination of likelihood of torture, but it is not dispositive. *See* 8 C.F.R. § 1208.16(c)(3)(i). Torture is defined as "severe pain or suffering . . . intentionally inflicted . . . by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official

7

capacity" and "does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." *Id.* § 1208.18(a). "[T]orture requires proof of something more severe than the kind of treatment that would suffice to prove persecution." *Kyaw Zwar Tun v. U.S. INS*, 445 F.3d 554, 567 (2d Cir. 2006). Accordingly, the agency did not err in concluding that Singh's two beatings by members of an opposing party, from which he identified no lasting effects, were insufficient to establish past torture. *Cf. Jian Qiu Liu v. Holder*, 632 F.3d 820, 822 (2d Cir. 2011) (finding no error in agency's conclusion that petitioner had not demonstrated harm rising to the level of persecution where petitioner's injuries "required no formal medical attention and had no lasting physical effect"); *Beskovic v. Gonzales*, 467 F.3d 223, 226 (2d Cir. 2006) (explaining that "any physical degradation designed to cause pain, humiliation, or other suffering, may rise to the level of persecution if it occurred in the context of an arrest or detention").

Nor did the agency err in concluding that Singh had not shown government acquiescence to his torture. Singh testified that the BJP-led government "never harmed" him and that the Congress Party, rather than the Badal Party, controlled the area where he lived in India. Moreover, his evidence related to country conditions showed government attempts to combat corruption, and he lacked

8

evidence of torture of people similarly situated to him. *See Quintanilla-Mejia*, 3 F.4th at 593–94 ("[S]ubstantial evidence review does not contemplate any judicial reweighing of evidence. Rather, it requires us to ask only whether record evidence compelled an acquiescence finding different from that reached by the agency."); *see also Mu Xiang Lin v. U.S. Dep't of Just.*, 432 F.3d 156, 160 (2d Cir. 2005) (to warrant CAT relief, an applicant must "establish[] that someone in his particular alleged circumstances is more likely than not to be tortured" (emphasis and internal quotation marks omitted)). Singh appears to contend that the failure of the police to assist him alone established government acquiescence to his torture. This claim ignores the fact that CAT relief is prospective. *See Ramsameachire v. Ashcroft*, 357 F.3d 169, 185 (2d Cir. 2004) ("A CAT claim focuses solely on the likelihood that the [applicant] will be tortured if returned to his or her home country, regardless of the [applicant's] subjective fears of persecution or his or her past experiences."). Moreover, Singh's country conditions evidence showed that individual state governments control local police, Singh testified that the Congress Party was in power in his home state, and the record reflected some protective governmental responses to violence against those who are similarly situated to Singh. *See Mu Xiang Lin*, 432 F.3d at 160.

We do not separately consider Singh's due process claim.  To the extent he intends to bring it as a claim separate from his challenges to the denial of relief, it is, as the Government points out, unexhausted.  *See Ud Din v. Garland*, 72 F.4th 411, 419–20 & n.2 (2d Cir. 2023); *see also Punin v. Garland*, 108 F.4th 114, 124 (2d Cir. 2024) ("[W]hen an argument made to this Court cannot be closely matched up with a specific argument made to the BIA, it has not been properly exhausted and we cannot hear it.").

For the foregoing reasons, the petition for review is DENIED.  All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court